

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-15-00243-CV
_____

### IN THE INTEREST OF D.L.W., A CHILD

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 41,087-A; Honorable William D. Smith, Presiding

December 4, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This appeal concerns the termination of the parental rights of Appellant, T.M.,[1] as to D.L.W., the youngest of her five children.[2] In November of 2013, the underlying proceeding was initiated when the Department of Family and Protective Services, filed its original petition seeking termination of T.M.'s parental rights as to the two youngest

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014). *See also* TEX. R. APP. P. 9.8(b).

[2] T.M. had five children: S.M., K.M., L.M., H.M., and D.L.W. When proceedings were initiated, the two oldest children, S.M. and K.M., were adults. L.M., a male child originally adopted by T.M. in 2002, had also been placed in the custody of his birth mother.

children, H.M. and D.L.W. The case was originally styled *In the Interest of H.M. and D.W., Children.* The two children had different fathers. H.M. was a female child born to T.M. and H.M.'s father in 2004. D.L.W. was a male child born to T.M. and D.W. in 2007.

In April 2014, on the Department's motion, the case was severed and the termination proceeding continued separately as to H.M. in trial court cause number 37,417, and as to D.L.W. in trial court cause number 41,087-A. In October 2014, a hearing was held in trial court cause number 37,417. As a result of that hearing, a conservatorship order was entered on June 9, 2015, appointing H.M.'s father as her sole managing conservator and T.M. as her possessory conservator.[3]

Following severance of H.M.'s case, the Department filed its first amended petition in D.L.W.'s case, i.e., trial court cause number 41,087-A. A final hearing was held on May 15, 2015, resulting in the entry of an order terminating T.M.'s parental rights as to D.L.W. based on section 161.001(b)(1), (D), (E), (O), and (P) of the Texas Family Code (West Supp. 2015),[4] and a best interest finding. The parental rights of D.W. (D.L.W.'s father) were also terminated, but he did not appeal.[5]

---

[3] While the supplemental clerk's record in this proceeding contains the *Order on Motion for Severance,* it does not contain the conservatorship order entered in trial court cause number 37,417. A copy of that order is, however, attached to T.M.'s brief. That fact notwithstanding, documents attached in an appendix to an appellate brief and not formally included in the appellate record will not be considered in support of arguments raised on appeal. *Crossley v. Staley*, 988 S.W.2d 791, 794 (Tex. App.—Amarillo 1999, no pet.). Moreover, because we do not have a transcription of the hearing in that case, evidence related to D.L.W.'s best interest will be limited to the evidence in the record before us.

[4] Unless otherwise designated, all future references to "section" or "§" are references to the Texas Family Code.

[5] At the time of trial, D.W. was incarcerated.

T.M. now challenges the termination order entered in trial court cause number 41,087-A, asserting (1) the Department was judicially estopped from claiming it was in D.L.W.'s best interest to terminate her parental rights when she had also been named as H.M.'s possessory conservator; (2) the doctrine of *res judicata* should have limited the evidence considered on D.L.W.'s best interest to the time period between the hearing leading to H.M.'s conservatorship order and the hearing leading to the termination order; and (3) the evidence was factually insufficient to support a finding that termination was in D.L.W.'s best interest. T.M. does not challenge any of the statutory grounds supporting termination. We affirm.

APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes (1) one or more acts or omissions enumerated under section 161.001(b)(1) of the Texas Family Code and (2) that termination of that relationship is in the best interest of the child. § 161.001(b)(1), (2) (West Supp. 2015).

The burden of proof is on the Department to establish its claims by clear and convincing evidence. § 161.206(a) (West 2014). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002). Although evidence presented may be relevant to both the statutory grounds for termination and best interest, each element must be established separately and proof of one element does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28.

BACKGROUND

T.M. abuses methamphetamine,[6] has a history of domestic violence with D.L.W.'s father, and exercises poor judgment with relationships. In February 2013, the Department received a referral alleging neglectful supervision of D.L.W. by his mother and physical abuse of D.L.W. by his father. Both parents agreed to participate in Family Based Safety Services which were implemented in May 2013. T.M. was asked to complete a drug and alcohol assessment, maintain sobriety by submitting to drug screening, and participate in counseling.

Within months of beginning his services, D.L.W.'s father was arrested for assault on a family member. In July 2013, he was placed on deferred adjudication community supervision and ordered to not have contact with T.M. or her children. Neither he nor T.M. abided by that condition and D.L.W.'s father moved back in with his family in October 2013. The Department subsequently requested that D.L.W.'s father move out of the home due to the history of domestic violence and later discovered his living arrangements violated the conditions of his community supervision.[7] T.M.'s drug screens continued to show she was using methamphetamines and she refused to have D.L.W.'s father move out of her home.

The continued drug use and presence of D.L.W.'s father in the home led the Department to seek removal and temporary conservatorship of H.M. and D.L.W. in

---

[6] T.M. testified she was a recreational drug user and became an addict because of poor choices and because her children were removed. However, according to the evidence, she tested positive for drugs prior to the removal of her children and continued to use drugs on and off during the eighteen months from initiation of termination proceedings to the final hearing.

[7] Eventually, D.W. was adjudicated guilty of assault on a family member and sentenced to four years confinement.

November 2013. Ultimately, T.M.'s refusal to cooperate with the Department resulted in the prosecution of these termination proceedings, which in turn resulted in this appeal.

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d at 26. The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

ISSUE ONE—JUDICIAL ESTOPPEL

By her first issue, T.M. maintains the Department is judicially estopped from claiming it is in D.L.W.'s best interest to terminate her parental rights. Her position is that H.M.'s best interest and D.L.W.'s best interest overlap and, therefore, because it was not in H.M.'s best interest that T.M.'s parental rights be terminated, it cannot be in D.L.W.'s best interest that those rights be terminated either. We disagree.

The doctrine of judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in

5

another proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009). Equitable estoppel generally does not apply to governmental entities exercising governmental powers. *In the Interest of S.A.P.*, 156 S.W.3d 574, 577 (Tex. 2005). Additionally, estoppel is for the protection of innocent persons, and only the innocent may invoke it. *Id.* It is difficult to imagine how parents who endanger their children can have "clean hands." *Id.* Even assuming that estoppel applied, there are termination cases in which parental rights were terminated as to some children but not others. *See In the Interest of G.M.G.*, 444 S.W.3d 46, 50 n.1 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re T.R.M.*, No. 14-14-00773-CV, 2015 Tex. App. LEXIS 2220, at *1 n.1 (Tex. App.—Houston [14th Dist.] March 10, 2015, no pet.) (mem. op.); *In the Interest of A.J.E.M.-B.*, No. 14-14-00424-CV, 2014 Tex. App. LEXIS 12129, at *17 (Tex. App.—Houston [14th Dist.] Nov. 6, 2014, no pet.) (mem. op.). T.M.'s judicial estoppel argument is without merit. Issue one is overruled.

ISSUE TWO—RES JUDICATA

T.M. next asserts that granting her possessory conservatorship of H.M. is *res judicata* as to D.L.W.'s best interest. Relying on *C.B. v. Tex. Dep't of Family & Protective Serv.*, 440 S.W.3d 756 (Tex. App.—El Paso 2013, no pet.), she urges that in determining D.L.W.'s best interest, this court should consider only evidence of her behavior between October 2014 and May 2015—the time period between H.W.'s final hearing and D.L.W.'s final hearing. Again, we disagree.

*C.B.* involved unique circumstances in which C.B. and the Department entered into a mediated settlement agreement under the Family Code for the return and monitor of her children. In addition to the settlement agreement, the trial court entered a

6

temporary order providing that placing the children with C.B. was in their best interest. *Id.* at 763-64. Three days after being returned to C.B., the children were re-removed for her failure to abide by the conditions of the settlement agreement. *Id.* at 764. Termination proceedings continued and resulted in a jury trial.

Per C.B.'s request and without objection from the Department, the trial court instructed the jury that the settlement agreement was a judicial admission by the Department that, as of the date the children were returned to her, it was in their best interest. Given the instruction, the jury was required to focus on C.B.'s conduct between the date the children were returned to her and the date of re-removal. The jury terminated C.B.'s parental rights.

On appeal, C.B. argued insufficiency of the evidence on the best interest finding because evidence of her conduct should have been limited to the three-day-period between the return and monitor date and re-removal date. In its analysis, the El Paso Court recognized that "[t]here is abundant authority in Texas standing for the proposition that a court order regarding placement of children is *res judicata* of their best interest as of the date of the order." *Id.* at 766. Citing three decisions involving modification or custody cases,[8] the court continued, "[p]rior bad acts by a parent may not be dredged up thereafter as grounds for modification of permanent or temporary conservatorship." *Id.*

The court acknowledged an exception to a *res judicata* effect of a best interest finding, to-wit: evidence of prior conduct by the parent cannot be introduced *except* to

---

[8] *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969); *Wilson v. Elliott*, 96 Tex. 472, 73 S.W. 946 (1903); *Bates v. Tesar*, 81 S.W.3d 411, 436 (Tex. App.—El Paso 2002, no pet.).

corroborate evidence of similar conduct since the original decree. *See id. See also In the Interest of C.E.B.*, 604 S.W.2d 436, 443 (Tex. Civ. App.—Amarillo 1980, no writ). Notwithstanding C.B.'s argument, the court found that C.B. had engaged in a continuing course of conduct that was not in her children's best interest and affirmed the termination order. *C.B.*, 440 S.W.3d at 770-772.

Given the posture of *C.B.*, we find it inapposite and decline to apply it. In the case before us, there was no monitor and return order, nor a jury trial with an instruction limiting the scope of evidence that could be considered in determining D.L.W.'s best interest. Additionally, *C.B.* involved the same children in one proceeding whereas this case involves two separate proceedings to determine the best interest of two separate children.

Even if *C.B.* applied, the exception to limiting the scope of evidence in a *res judicata* best interest finding would be applicable because T.M. engaged in a continuous course of conduct by continuing to abuse drugs during the time period between the hearing resulting in the conservatorship order pertaining to H.M. and the termination order at issue in this appeal. *See In the Interest of C.E.B.*, 604 S.W.2d at 443. T.M. testified to using methamphetamines less than one month before the final hearing in D.L.W.'s case. She also testified that the longest she had been clean during the entirety of the termination proceedings was four months and had "slipped" "less than ten" times in the previous six months. Her testimony is evidence corroborating her prior methamphetamine use.

Furthermore, a party claiming the affirmative defense of *res judicata* must prove (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *In re K.S.*, 76 S.W.3d 36, 43 (Tex. App.—Amarillo 2002, no pet.).[9]

In November 2013, the Department sought to terminate T.M.'s parental rights to H.M. and D.L.W. in the same proceeding. However, proceedings pertaining to each child were severed and became separate suits. The conservatorship order awarding T.M. possessory conservatorship of H.M. (not included in this record) is not a final judgment involving the same claims or issues. What is in the best interest of H.M. is not, *ipso facto,* in the best interest of D.L.W. The mere fact that some of the evidence presented in both proceedings could have been the same does not establish that the termination proceeding as to D.L.W. was "based on the same claims as were or could have been raised" in the proceeding pertaining to H.M. Appellant's argument totally ignores the impact that the resulting placement might have on the child, the subject of the respective proceedings. Accordingly, T.M. has failed to establish a claim of *res judicata*. Issue two is overruled.

ISSUE THREE—BEST INTEREST § 161.001(b)(2)

Finally, T.M. asserts the evidence is factually insufficient to support a finding that termination of her parental rights was in D.L.W.'s best interest. In a factual sufficiency

---

[9] If not pleaded, the affirmative defense of *res judicata* may be tried by consent. *Man Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 135-36 (Tex. 2014). T.M. did not plead *res judicata* but the evidence in the record before us does raise the issue of whether the trial court's best interest finding as to H.M. should apply to D.L.W.

review with a heightened standard of review, a court of appeals must give due consideration to the evidence the fact finder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We must determine whether that evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so, we consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a) (West Supp. 2015). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. Two relevant factors are drug use by a parent and failure to provide a safe physical home environment. *Id.* at (b)(8), (12)(D).

The Supreme Court has set out additional factors to consider when determining the best interest of a child. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6)

10

the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

A child's need for permanence through the establishment of a "stable, permanent home" has also been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). *See also* § 263.307(a) (prompt and permanent placement in a safe environment is presumed to be in the child's best interest).

According to T.M., she and her son have a good and loving relationship and he is bonded to his sister, H.M. T.M. testified she had changed her lifestyle and was working on establishing a home for her family. However, during cross-examination at the final hearing, after eighteen months of involvement with the Department, when asked if she was seeking the return of her child, she responded, "[n]o." She explained that she needed more time to get her life together. Meanwhile, D.L.W. had already spent eighteen months living with and bonding with his foster family.

In addition to her drug use and poor choices, at the time of the final hearing, T.M. did not have a stable home or steady employment to provide for D.L.W. Several months before the hearing, she was arrested for assault causing bodily injury to her adult daughter and spent one week in jail before being bonded out.[10] She and her daughter were involved in a dispute over ownership of a washing machine that T.M. had loaded into her vehicle. When confronted by her daughter, T.M. pushed her out of a vehicle window and drove away. She was arrested for the assault and also cited for drug paraphernalia for having a syringe in her vehicle.

The caseworker testified that T.M. failed to comply with many of the terms of her family service plan.[11] Over objection, the caseworker testified that T.M. tested positive for methamphetamines on April 7, 2015, one month before the final hearing. The caseworker's opinion was that D.L.W. needed to be part of a family and T.M. was not making an effort to refrain from drug use or take steps necessary to obtain the return of her child.

The caseworker was cross-examined on the Department's recommendation not to terminate T.M.'s rights as to H.M. She explained that H.M.'s father was an appropriate parent and he wanted T.M. to be a part of H.M.'s life. If the arrangement did not work, he could seek modification. However, as to D.L.W., T.M. was not a suitable parent, had no support system, and could not offer him a stable and loving home like his foster family.

---

[10] The charge was pending at the time of the final hearing.

[11] The family service plan was introduced into evidence.

12

D.L.W.'s foster mother has known T.M. and her family for some time. She was once a babysitter for T.M.'s children. She was familiar with the domestic violence between T.M. and D.L.W.'s father. D.L.W. is a nervous child with a learning disability. He has been diagnosed with reactive attachment disorder which makes it difficult to have healthy relationships with primary caregivers. At first, he was withdrawn but has since bonded to his foster family and trusts them. He enjoys numerous extracurricular activities with his foster family such as camping, swimming, and riding bicycles.

The foster mother testified that T.M. had scheduled visitation with D.L.W. on Tuesdays and he would struggle to get dressed and go to school on those days. When T.M. failed to show for her visits, he became withdrawn. The foster mother opined that termination of T.M.'s parental rights was in D.L.W.'s best interest. However, she did not foreclose a relationship between D.L.W. and his sister, H.M. She and her husband expressed intent to adopt D.L.W. and provide him with a stable family life.

Based on the record before us, we conclude the evidence was sufficient to produce in the mind of the trial court a firm belief or conviction that termination of the parent-child relationship was in the best interest of D.L.W. Issue three is overruled.

CONCLUSION

The trial court's order terminating T.M.'s parental rights to D.L.W. is affirmed.


Patrick A. Pirtle
Justice

13