138

Argued September 24, reversed December 10, 1970

ZIMBRICK ET AL, *Respondents, v.* MORGAN ET AL, *Appellants.*

477 P2d 908

*James H. Clarke,* Portland, argued the cause for appellants. With him on the briefs were Lee Johnson, Attorney General, E. Nordyke, Assistant Attorney

General, Salem, Lewis K. Scott and McCulloch, Dezendorf, Spears & Lubersky, Portland.

*William A. Babcock*, Springfield, argued the cause for respondents. With him on the brief were Babcock & Ackerman, Springfield, and A. C. Roll, Oceanside, Oregon.

Before Schwab, Chief Judge, and Langtry and Branchfield, Judges.

LANGTRY, J.

This is an appeal under ORS 657.285 from reversal in circuit court of action by the Appeals Board of the Department of Employment.

Plaintiffs, who prevailed in circuit court, are former employes of defendant Crown Zellerbach Corporation's Plywood Division in Columbia County, Oregon. The employer closed its operation where plaintiffs were employed, thus terminating their employment in August 1968. Under the pre-existing collective bargaining agreement, the employer negotiated with the employes an agreement to pay terminated employes a lump sum severance pay, based on length of employment, or provide seniority for employment in employer's Sawmill Division. All of the plaintiffs chose the lump sum payment.

Plaintiffs filed claims for unemployment compensation with the defendant Department of Employment for the allowable time they were unemployed after the closure. The Department disqualified them for such benefits, and the same finding was made subsequently by a hearing officer and the Appeals

Board. In the circuit court additional findings were made and compensation benefits were ordered.

. The hearing officer and Appeals Board decisions were based on ORS 657.100 and 657.205, before they were amended in 1969, and Oregon Administrative Rules ch 471, § 30-020, promulgated under authority of ORS 657.610 by the Commissioner of the Department of Employment before this case arose.

ORS 657.100 provides:

"An individual is deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him * * *."

ORS 657.205, before its 1969 amendment, provided:

"(1) Subject to the provisions of subsections (2) and (3) of this section, an individual is disqualified for benefits for any week with respect to which he is receiving, will receive, or has received:

"(a) Remuneration as a dismissal or separation allowance, as vacation pay or as a guaranteed wage; * * *

"* * * * *

"(2) In determining disqualification for any week under subsection (1) of this section, if the remuneration and payments referred to in paragraphs (a) and (b) of subsection (1) of this section cover a period greater than and include such week, a pro rata share of such remuneration and payments shall be apportioned to such week.

"(3) If under this section the remuneration and payments, or the pro rata share thereof, in any week are less than the benefits which would otherwise be due under this chapter for such week, such individual is entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration and payments."

Oregon Administrative Rules ch 471, § 30-020 provided:

"30-020 DISMISSAL, SEPARATION ALLOWANCES; GUARANTEED WAGE; AND VACATION PAY.

"(1) Dismissal, separation, or guaranteed wage payment(s) whether or not legally required to be paid, or vacation pay, shall be considered wages and shall be included in the return of the employer at the time they are paid.

"(2) Weeks with respect to which dismissal, separation, guaranteed wage, or vacation payments have been allocated in accordance with this regulation shall be considered weeks of work in determining qualification for benefits under the provisions of ORS 657.150(2).

"(3) *With respect to dismissal, separation pay,* or guaranteed wage, *either paid in a lump sum upon termination or in weekly or other installments as may be determined by the parties, the Commissioner shall allocate such pay* or a pro rata share thereof *to the weeks following termination upon the basis of the individual's regular rate of pay for a full week of employment * * *.*" (Emphasis supplied.)

If the emphasized language of Oregon Administrative Rules ch 471, § 30-020(3), above, is not an unauthorized extension of ORS 657.205, it supports the decisions of the hearing officer and Appeals Board.

In 1969, the legislature put the substance of OAR ch 471, § 30-020 into ORS 657.205 by adding to subsection (2) thereof, the following:

"* * * Such payments [referring to dismissal or separation allowances] made in a lump sum upon termination * * * shall be considered as payments with respect to weeks following separation without regard to the existence or lack

thereof of an employe-employer relationship during the weeks such pay is allocated * * *."

It was conceded in oral argument that if the last quoted language had been in the statute at the time this dispute arose, plaintiffs' argument in this appeal would be untenable. Thus, this appears to be a case of first and last impression.

The reasons for the circuit court's reversal of the Appeals Board are:

"* * * [T]he Findings of Fact of the referee, adopted by the appeals board, are supported by the evidence and are adopted by this court.

"However I find additionally that the 'Settlement Agreement' (Exhibit 3) was negotiated and entered into pursuant to the provisions of section 9 E of a collective bargaining agreement existing between Crown Zellerbach Corp. and Local 2916 of the Lumber and Sawmill Workers Union 'to work out an equitable method of plant seniority'. (Tr. 19, 20, Parry)  I further find that the consideration for the receipt of the so called 'severance pay' by employees receiving the same was relinquishment of seniority rights and employment privileges enjoyed by those employees by virtue of the collective bargaining agreement and was not, in anyway, related to any period or periods of unemployment subsequent to the payment of the severance pay.

"Accordingly, I conclude that the 'separation pay' received by plaintiffs was not received 'with respect to' any week following termination of employment by Crown Zellerbach and plaintiffs are not disqualified for benefits under ORS 657.205."[1]

---

[1] Mr. Parry testified:

"A. Well, they entered into an agreement to determine an equitable method of settlement of the closure.

"Q. Had either separation pay or maintaining their seniority to go to the sawmill entered into it?

"A. That's correct."

ORS 657.285(5), prior to the 1969 amendments, provided:

"In any judicial proceeding under this section, the findings of the Appeals Board as to the facts if supported by evidence, in the absence of fraud, are conclusive, and the jurisdiction of said court shall be confined to questions of law ＊ ＊ ＊."

Applying this statute in a similar situation, the Oregon Supreme Court concluded the circuit court had encroached on the fact-finding power of the agency:

"Whether a finding is a 'finding of fact' or a 'conclusion of law' depends upon whether it is reached by natural reasoning or by fixed rules of law. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a 'conclusion of law.' *Mallinger v. Webster City Oil Co.*, 211 Iowa 847, 234 NW 254. A 'finding of fact' is a conclusion drawn by way of reasonable inference from the evidence. *State Acting by and Through Oregon State Board of Higher Education v. Cummings*, 205 Or 500, 288 P2d 1036; *Griffith v. Gardner*, (9th cir.) 196 F2d 698.

"There are no rules of law to be applied in determining whether or not these claimants were directly interested in a labor dispute. Such a determination can be arrived at only by an examination of the facts. Therefore, when the commissioner found that the claimants were 'directly interested' in the labor dispute which caused their unemployment, he had made a 'finding of fact' based on the evidence, and not a 'conclusion of law.'"*Henzel et al v. Cameron et al*, 228 Or 452, 463, 365 P2d 498 (1961).

The circuit judge referred to the transcript, basing his finding as to the purpose of the negotiations upon equivocal oral testimony of an employer official (Parry). Under the *Henzel* case, we think this

was a finding of fact. See also *Baker v. Cameron*, 240 Or 354, 358-59, 401 P2d 691 (1965).

Plaintiffs urge that if we hold the circuit court made a finding of fact we should return the case to the hearing officer for further findings of fact. We consider that unnecessary. Sufficient facts were found under the administrative process to dispose of the case, if OAR ch 471, § 30-020 was valid in 1968. We think it was valid then and merely explanatory of the statute. The fact that the legislature added its substance to the statute in 1969 is indicative of its intention not to allow unemployment compensation in a situation where lump sum severance or dismissal pay, provided by the employer, is allocable under the formula of the regulation to the same period of time.[2]

Reversed.

---

[2] We have considered the cases cited by respective counsel, and have found the Annotation in 93 ALR 2d 1319 (1964), "Severance payments as affecting right to unemployment compensation" particularly helpful in understanding the problems involved. The author there says that the matter is one of statutory construction:

"The eligibililty of a recipient of severance pay for state unemployment benefits could be said to depend upon the nature of the applicable statutory provision. Under statutes excluding periods 'with respect to which' wages were paid, it is generally held that the recipient of severance pay is eligible to collect state unemployment benefits, although there is some authority to the contrary. On the other hand, under statutes excluding periods for which the claimant received compensation in the form of severance pay, it has been held that the recipient of severance pay is ineligible to collect state unemployment benefits, although, here again, there are cases in which an opposite result was reached." 93 ALR 2d at 1321.

He then adds that the wide split of authority on the question may also be partly attributable to differences in what various courts consider to be the nature of severance pay.

We think the legislative intention has been expressed in Oregon and that we are not free to choose between points of view.